UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MARTINEZ JIMENEZ,<br><br>   Plaintiff,<br><br>   v.<br><br>CURRENT OR ACTING FIELD OFFICE DIRECTOR, SAN FRANCISCO FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>   Defendants. | Case No.  23-cv-03566-SVK<br><br>**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

For more than fifteen months, U.S. Immigration and Customs Enforcement (ICE) has detained Petitioner Victor Martinez Jimenez without conducting an individualized bond hearing to consider whether his detention is necessary to protect the public's safety or ensure his availability for deportation at the end of his removal proceedings, which are ongoing.  ICE detains Petitioner pursuant to 8 U.S.C. § 1226(c), which mandates the detention pending removal of people who have been convicted of certain crimes.  ICE is holding Petitioner at a private detention center that is operated by The GEO Group, Inc. and located outside of the Northern District but overseen by ICE officials based in San Francisco.

For the reasons set out below, the Court concludes that it has jurisdiction over Petitioner's petition and that Petitioner's prolonged detention without a bond hearing violates his procedural due process rights.  The government is therefore ordered, by **March 13, 2024**, to provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner's continued detention is justified by the need to prevent his flight or protect the public.

## I. BACKGROUND[1]

### A. Petitioner's Background

Petitioner is a citizen of El Salvador who entered the United States as a child. Dkt. 11 at 2; Dkt. 15 at 1; Dkt. 16 ¶ 4. On or about January 23, 1990, Petitioner became a Lawful Permanent Resident of the United States. Dkt. 11 at 2; Dkt. 12 ¶ 7. As a child, Petitioner attended schools in the Los Angeles area. Dkt. 16 ¶ 4. After leaving high school, he worked at an appliance store for ten years. *Id.* ¶ 8 & Ex. C. Petitioner has two adult children who are United States citizens. *Id.* ¶ 6. He also has other adult family members, including siblings, who reside in the United States. *Id.* ¶ 7.

In 1987, Petitioner was convicted of burglary and sentenced to 60 days in jail. Dkt. 12 ¶¶ 5-6 & Ex. 1. In 1997, Petitioner was convicted of two counts of attempted murder and two counts of assault with a firearm. *Id.* ¶¶ 5, 8 & Ex. 3. He was sentenced to 24 years and eight months in prison. *Id.* In 2017, Petitioner was convicted for an assault committed while in prison. *Id.* ¶¶ 5, 14 & Ex. 9.

While incarcerated, Petitioner obtained his G.E.D. Dkt. 16 ¶ 5 & Ex. A. He also worked in various positions, including in kitchens and machine shops, while incarcerated. *Id.* ¶ 9 & Ex. D. If he is released from immigration custody, Petitioner hopes to obtain employment in construction, and he has been in touch with organizations that can assist him with job training and placement as well as housing. Dkt. 16 ¶¶ 13-14 & Ex. I.

### B. Relevant Immigration Proceedings

Following several earlier instances when Immigration Detainers (Form I-247) were lodged pursuant to Petitioner's incarceration at various facilities, on or about October 5, 2022, an Immigration Detainer, Form I-247, was lodged pursuant to his incarceration at the Avenal State Prison (ASP) in Avenal, California. Dkt. 12 ¶ 15 & Ex. 10. On or about October 11, 2022,

---

[1] Except as indicated, the facts in this section are not disputed.

Petitioner was taken into DHS custody upon his release from ASP and transferred to the Golden State Annex, which is discussed in more detail in Section I.C. below. *Id.* ¶ 16. ICE Enforcement and Removal Operations assessed that Petitioner posed a risk to public safety and would remain in custody. *Id.* ¶ 16 & Ex. 11.

Petitioner was taken into custody pursuant to 8 U.S.C. § 1226(c). *Id.* ¶ 16. That statute directs that the "Attorney General shall take into custody any alien who … is deportable by reason of having committed [certain crimes listed in other sections] … when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Petitioner does not contest that his prior convictions are covered under section 1226(c).

On or about October 11, 2022, DHS filed a Motion to Re-Calendar and Change of Venue to the Van Nuys Immigration Court with the Executive Office for Immigration Review (EOIR) to restart removal proceedings, which had been administratively closed in 2004. *Id.* ¶ 17 & Ex. 12. On or about October 26, 2022, an immigration judge granted the motions, Petitioner's proceedings were placed back on the court's active docket, and venue was changed to the Van Nuys immigration court. *Id.*

On or about January 20, 2023, an immigration judge denied Petitioner's application for asylum, withholding of removal pursuant to Section 241(b)((3) of the INA, and deferral of removal under the Convention Against Torture and ordered Petitioner removed to El Salvador. *Id.* ¶ 19 & Ex. 13.

On or about January 30, 2023, Petitioner filed a motion to reopen removal proceedings with the EOIR, which was denied by the immigration judge on January 31, 2023. *Id.* ¶ 20 & Ex. 14.

On or about February 27, 2023, Petitioner filed an appeal with the Board of Immigration Appeals (BIA). *Id.* ¶ 21 & Ex. 15. On or about July 20, 2023, the BIA dismissed Petitioner's

3

appeal. *Id*. ¶ 22 & Ex. 16.

On or about August 4, 2023, in the Ninth Circuit, Petitioner filed a Petition for Review and Motion to Stay Removal, which automatically stayed his removal pending further order of that court in accordance with the Ninth Circuit's General Order 6.4(c). *Id*. ¶ 23. The Ninth Circuit originally set a briefing schedule on the motion to stay removal. *See* Dkt. 14-1 at Ex. 1 at Dkt. No. 4. Petitioner has filed motions to continue various dates in the Ninth Circuit case. *See id.* at Dkt. Nos. 11, 14, 15. From the Court's review of the Ninth Circuit docket, it appears that the briefing schedule on the motion to stay removal has been vacated pending appointment of counsel for Petitioner. *Id.* at Dkt. No. 23.

According to Respondents, but for the Ninth Circuit's temporary judicial stay of removal voluntarily sought and obtained by Petitioner, ICE would seek to effectuate the release of Petitioner via removal to his home country of El Salvador pursuant to the administratively final removal order. Dkt. 12 ¶ 24.

### C.      Golden State Annex

GSA, where Petitioner is detained, is a private immigration detention facility operated by GEO under contract with ICE. *See* Dkt. 13 ¶ 6. GSA is located in McFarland, California, which is outside the Northern District. *Id.* GSA falls within the area of responsibility of the San Francisco Field Office for ICE Enforcement and Removal Operations. *Id.* ¶¶ 9-10. Moises Becerra is the director of the San Francisco Field Office. *Id.* ¶¶ 8-10.

The GSA Facility Administrator (*i.e.*, warden), who is not a federal official, is employed by GEO and based in McFarland. *Id.* ¶ 6. GSA is overseen "through various inspection processes by ICE and other entities." *Id.* One of these processes is that, according to the government, ICE Acting Assistant Field Office Director Nancy Gonzalez and other ICE staff "directly liaise with the GSA Facility Administrator and other GEO employees regarding the detainees at GSA." *Id.* ¶ 7. Ms. Gonzalez and her direct supervisor, Deputy Field Office Director Orestes L. Cruz, are

4

based in Bakersfield, California, which is not in the Northern District. *Id.* ¶¶ 7-8. Mr. Cruz's direct supervisor is Mr. Becerra, based in San Francisco. *Id.* ¶ 8.

### D. Procedural History

Petitioner filed a petition for writ of habeas corpus with this Court on July 19, 2023, arguing that his continued detention violates both his due process rights and his rights under the Eighth Amendment. Dkt. 1. At that time, Petitioner had been detained at ICE's private detention facility, GSA, for more than 8 months without receiving a bond hearing before an immigration judge to determine whether he could be released from custody upon payment of a bond. Petitioner requests either: (1) an order that he be released from custody and placed on supervised release; or (2) an order that he be released from custody unless Defendants schedule a bond hearing before an immigration judge within 30 days. Dkt. 1 Defendants filed a response to the petition (Dkt. 11), and Petitioner filed a traverse (Dkt. 15).[2] All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 5, 8, 10.

## II. LEGAL STANDARDS

The Court can grant a writ of habeas corpus to detainees in custody "under … the authority of the United States" or "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (c)(3). Although Congress has barred courts from reviewing certain discretionary decisions regarding the detention or release of noncitizens subject to removal proceedings, *see* 8 U.S.C. §§ 1226(e), 1252(a), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law,'" including via habeas petitions. *Martinez v. Clark*, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)).

An application for a writ of habeas corpus "shall allege the facts concerning the applicant's … detention." 28 U.S.C. § 2242. In turn, the allegations made in an answer to a

---

[2] Petitioner's administrative motion at Dkt. 17 for leave to file under seal Exhibits B, E, and F to the Declaration of Laura Acevedo in support of the traverse is **GRANTED**.

5

habeas petition, "if not traversed, shall be excepted as true." *Id.* § 2248. Oral testimony, depositions, affidavits, and documentary evidence are permissible. *See id.* §§ 2246, 2247. Following receipt of a habeas petition, the Court "shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.* § 2243.

### III. JURISDICTION

Petitioner is detained at a private contract facility located outside the Northern District. The government argues that this fact deprives this Court of jurisdiction over his application. Dkt. 11 at 5-11. But courts in this District have repeatedly rejected this argument and exercised jurisdiction over petitions like this one where federal officials within the Northern District oversee detention that has been outsourced to contract facilities outside the District. *See Doe v. Becerra,* -- F. Supp. 3d --, No. 23-cv-04767-PCP, 2023 WL 8307557, at *3 n.1 (N.D. Cal. Dec. 1, 2023 (collecting cases). For the reasons that follow, the Court concurs and concludes that it has jurisdiction over the petition in this case.

The government's jurisdictional challenge involves two intertwined arguments. First, the government argues that the only proper respondent is the warden of the facility where Petitioner is being held and that it was improper for the petition to include as respondents the ICE San Francisco Field Officer Director, the Director of ICE, the Secretary of Homeland Security, and the Attorney General. Dkt. 11 at 5-6. Second, the government argues that only the federal court of the district of confinement—in this case, the Eastern District—has jurisdiction over habeas petitions challenging present physical confinement. *Id.* at 6-11. The first question, however, is dispositive. *Doe v. Becerra,* 2023 WL 8307557, at *4. Under 28 U.S.C. § 2241(a), "[w]rits of habeas corpus may be granted by … the district courts …within their respective jurisdictions." If the ICE Field Office Director based in San Francisco is properly named as a habeas respondent, he is clearly within this Court's jurisdiction and a writ may properly be directed at him. By contrast, if the petition names only the GEO employee who administers GSA and is located outside the

6

Northern District, then this Court may not issue a writ to that employee.

The federal habeas statute specifies that an application for a writ of habeas corpus "shall allege … the name of the person who has custody over" the applicant. 28 U.S.C. § 2242. Similarly, if a court issues a writ, it must "be directed to the person having custody of the person detained." *Id.* § 2243. Interpreting a predecessor of this statute more than a century ago, the Supreme Court explained that "these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Wales v. Whitney*, 114 U.S. 564, 574 (1885). More recently, in *Rumsfeld v. Padilla*, the Supreme Court reasoned: "In accord with the statutory language and *Wales*' immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. 426, 435 (2004). "The plain language of the habeas statute," the Court continued, "thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443. "This is because … the immediate custodian rule applies to core habeas challenges to present physical custody," and "[b]y definition, the immediate custodian and the prisoner reside in the same district." *Id.* at 444.[3]

The question in this case is whether and how these "default" and "general" rules apply when a federal detainee is held in a non-federal facility operated under contract with the federal government. Or, put otherwise, who qualifies as the "immediate custodian" that Petitioner must name? The government argues that the only proper respondent in this case is the Facility

---

[3] The Supreme Court in *Padilla* expressly declined to resolve the open question "whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation." 542 U.S. at 435 n.8. *Padilla* thus did not decide the issue presented here.

Administrator—an unidentified GEO employee who is not a federal official. According to ICE Acting Assistant Field Office Director Gonzalez, this "Facility Administrator (i.e., warden) of GSA is a GEO employee, whose office is based in McFarland and provides direct on-site supervision of the facility and its personnel." Dkt. 13 ¶ 6. It is GEO, an "independent contractor," that "provides the facility with management, personnel, and services for 24-hour supervision of noncitizens in ICE custody at GSA." *Id.*

There are several problems with the government's position. First, *Wales* defined an immediate custodian for habeas purposes as "some person … with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." 114 U.S. at 574. Even if the GSA Facility Administrator exercises on-site, daily supervision over Petitioner, as the government contends, it is doubtful that this private citizen would have either the legal authority or practical ability to "produce the body" of Petitioner "before the court." *See id.* After all, the Facility Administrator "has custody of an immigration detainee … only to the extent provided by the facility's contract with the federal government." *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1186 (N.D. Cal. 2017). He may be the day-to-day "custodian" in a colloquial sense, but he "lacks any *actual* authority over the immigrant detainee." *See Domingo v. Barr*, No. 20-cv-06089-YGR, 2020 WL 5798238, at *2 (N.D. Cal. Sept. 29, 2020) (emphasis added). Even if a court so ordered, it is questionable whether this GEO employee would actually have the power to remove Petitioner from GSA and retain custody while transporting him to a court; at the very least, doing so would require permission and cooperation from ICE. Without such permission, it is not clear why he would have any independent basis to maintain Petitioner's custody beyond the confines of GSA.

Second, even if the Facility Administrator could "produce" Petitioner to the Court, he would be poorly positioned to defend his detention. Presumably he lacks much of the information needed to justify Petitioner's detention, and he and his employer, a private corporation, certainly

8

lack the federal government's incentive to do so. *See also Doe v. Barr*, No. 20-CV-02263-RMI, 2020 WL 1984266, at *5 (N.D. Cal. Apr. 27, 2020) ("[I]t goes without saying that the Sheriff of Yuba County is ill-placed to respond to the merits of the claims underlying the habeas petition at bar because the Sheriff would not be in possession of the information necessary to answer on behalf of federal immigration authorities, nor does the Sheriff have any legitimate interest in litigating these claims."). Notably, the federal habeas statute requires a court, on application, to a direct a writ or order "to the person having custody of the person detained." 28 U.S.C. § 2243. The court must issue such a writ or order "forthwith," and the named person must then respond "within three days" (or up to twenty "for good cause"), "certifying the true cause of the detention." *Id.* But in cases like this one, the Facility Administrator is a "mere functionary, no different than an individual jailor posted outside Petitioner's cell block." *Doe v. Barr*, 2020 WL 1984266, at *5. There are no allegations that the Facility Administrator or any other GEO employee played any role in the decisions or proceedings that led to Petitioner's detention, let alone that those GEO employees would be in a position to swiftly "certify" the causes thereof as required by statute, even with secondhand information. Indeed, it is telling that the declarations submitted in support of the government's return to this petition are exclusively from federal officials: ICE Acting Assistant Field Office Director Gonzalez (Dkt. 13), and ICE Deportation Officer Justin Steinke (Dkt. No. 12).

Third, even assuming the GSA Facility Administrator could produce Petitioner and defend his detention, that administrator is not in a position to provide the kind of relief a court might order in response. An order of release would confront him with conflicting commands from coequal branches of government: the contract with ICE compels him to keep Petitioner in custody, while the order from this Court would demand his release. An order to hold a bond hearing before an immigration judge—which is a form of relief repeatedly provided by other courts in this district in cases similar to this one—would present even more difficulties. It would be impossible for the

9

GSA Facility Administrator to comply with such an order on his own since GEO does not employ immigration judges, and in any event the government presumably does not wish for GEO to assume the responsibility for determining whether to continue Petitioner's detention.

Finally, the habeas statute recognizes that any form of unlawful detention is a serious deprivation that a court must seek to expeditiously resolve. *See* 28 U.S.C. § 2243.  The statute envisions the entire habeas process—from application to return to hearing to decision—being resolved within a matter of *days*.[4]  *Id.*  A strict application of the "default" immediate custodian rule that ignores the practical realities of private detention risks frustrating detainees' timely access to the habeas corpus relief guaranteed by statute and the Constitution.  Especially in light of the government's decision to outsource detention to remote facilities operated by private contractors, "it cannot be argued with any seriousness that when the warden of a detention facility has no literal power to produce the petitioner, and cannot provide any meaningful answers to important factual and legal questions, that nevertheless courts should apply the immediate custodian rule and drive the litigation into a dead-end for no legitimate reason and to the benefit of no party."  *Doe v. Barr*, 2020 WL 1984266, at *5.

ICE's own webpage for the Golden State Annex facility (a government publication of which the Court may take judicial notice) prominently lists the Golden State Annex as being affiliated with the "San Francisco Field Office," and the ICE website directs all feedback, comments, and complaints to the "Field Office Director, Enforcement and Removal Operations" located in San Francisco.  *See* ICE website at https://www.ice.gov/detention-facilities; https://www.ice.gov/detain/detention-facilities/golden-state-annex (last visited Feb. 14, 2024). Courts in this District have repeatedly held that ICE's San Francisco Field Office Director is a proper respondent in habeas petitions such as this one. *See, e.g., Doe v. Becerra,* 2023 WL

---

[4] This District's Habeas Local Rules, which set a more protracted briefing schedule for challenges to custody pursuant to a state court judgment, do not apply to habeas challenges to immigration detention.

8307557, at * 6; *I.E.S. v. Becerra,* No. 23-cv-03783-BLF, 2023 WL 6317617, at *5 (N.D. Cal. Sep. 27, 2023).

"The immediate custodian rule's purpose is not to create pointless hoops for habeas petitioners to jump through before they can challenge their confinement, but to prevent the kind of 'rampant forum shopping' that might happen if prisoners throughout the country could name a 'high-level supervisory official' like the President or the Secretary of Defense (who were both named in *Padilla*) and then sue them anywhere they are 'amenable to long-arm jurisdiction.'" *Doe v. Becerra,* 2023 WL 8307557, at * 6 (quoting *Padilla*, 542 U.S. at 447). Here, Petitioner has identified a local official who is both "readily identifiable" and exercises "immediate control" over his detention. *See Saravia*, 280 F. Supp. at 1187. That suffices.

The Current or Acting Field Office Director of the San Francisco Field Office of USCIS ("FOD") is properly named as a Respondent in the petition in this case.[5] Because the FOD is located within the Northern District of California, this Court has jurisdiction to enter an order requiring him to act. *See* 28 U.S.C. § 2241(a).

## IV. DISCUSSION

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized "detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

As of the date of this order, Petitioner has been detained at ICE's private detention facility,

---

[5] The petition identifies the FOD by title as a Respondent (Dkt. 1), and Respondents identify the FOD by name in their response to the petition (Dkt. 13 ¶¶ 8-9).

11

GSA, for more than 15 months without receiving a bond hearing before an immigration judge to determine whether he could be released from custody upon payment of a bond. At such hearings, an immigration judge "considers whether respondent's release would pose a danger to property or persons, whether the respondent is likely to appear for further immigration proceedings, and whether the respondent is a threat to national security," and may set the amount of bond if release is determined to be appropriate. *See* Dep't of Justice, Immigration Court Practice Manual, ch. 9.3, at 124–26 (2023).

Petitioner is detained pursuant to 8 U.S.C. § 1226(c), which directs that the "Attorney General shall take into custody" noncitizens who are inadmissible or deportable because they have been found guilty of certain covered criminal offenses. Noncitizens whom ICE has determined to be covered by Section 1226(c)'s mandatory detention provisions may challenge that determination administratively. *See* 8 C.F.R. § 1003.19(h)(2)(ii). But for noncitizens who are properly covered by Section 1226(c), detention is mandatory except under certain narrow circumstances not applicable here. The statute does not require any additional procedure, either before the government detains those covered by its terms or after detention has become significantly prolonged, to determine whether any individual noncitizen's detention is necessary to protect the public or ensure attendance at future removal proceedings.[6] Specifically, by regulation, immigration judges do not conduct bond hearings for noncitizens who are subject to mandatory

---

[6] The Ninth Circuit previously interpreted Section 1226(c) to require the government to provide a bond hearing after six months, based on its belief that a contrary interpretation of the statute "would be constitutionally doubtful." *Rodriguez v. Robbins*, 804 F.3d 1060, 1079 (9th Cir. 2015); *see also Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008). But the Supreme Court subsequently rejected this interpretation of Section 1226(c) while declining to decide whether noncitizens have a constitutional (rather than statutory) right to such a hearing. *Jennings v. Rodriguez* 583 U.S. 281, 286 (2018). While "an alien detained under § 1226(c) [is] subject to that detention authority throughout the administrative and judicial phases of her removal proceedings" and is "not entitled to a bond hearing under § 1226(c) as a *statutory* matter," *Rodriguez Diaz*, 53 F.4th at 1201, *reh'g and reh'g en banc denied*, 83 F.4th 1177 (9th Cir. 2023) (emphasis added), the point (if any) at which prolonged detention under Section 1226(c) without an individualized hearing becomes *unconstitutional* remains an open question.

detention under Section 1226(c).  *See id.*; *see also* 8 C.F.R. § 1003.19(h)(2)(i).

The Supreme Court has held that detention under Section 1226(c) "for the brief period necessary for … removal proceedings" is facially constitutional and does not violate due process requirements.  *Demore*, 538 U.S. at 513.  Petitioner argues, however, that his detention under Section 1226(c) has gone sufficiently far beyond the "brief period" accepted in *Demore* that his continued detention without a bond hearing violates due process.  He presents two claims.  First, he contends that his detention since October 2022 without any individualized review is sufficiently prolonged that it violates his due process rights.  Second, he argues that the government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment.  Dkt. 1.

For the reasons explained below, the Court concludes that although Petitioner's other arguments fail, procedural due process entitles Petitioner to a bond hearing.

### A.     Procedural Due Process Claim

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' … interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Although "the nature of … protection may vary depending upon status and circumstance," the Supreme Court has squarely held that "the Due Process Clause protects an alien subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94.  And "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Id.* at 690.  There can be no dispute that the government has deprived Petitioner of his liberty; the only question is whether he has been provided with the "process" constitutionally required to justify that deprivation.

The Parties do not agree what test should apply in determining what procedural safeguards are constitutionally required in this case.  Petitioner suggests that due process entitles him to a bond hearing under several alternative tests:  a bright-line rule holding that a bond hearing is

13

required after six months of detention, as well as the procedural due process test set forth in *Mathews v. Eldridge*, 424 U.S. at 335. Dkt. 1 ¶¶ 28-33; Dkt. 15 at 10-14. The government argues that there is no bright-line rule under which a section 1226(c) detention lasting more than six months would require a bond hearing. The government further argues that the Supreme Court has never resolved immigration detention challenges under the *Mathews* test. *See* Dkt. 11 at 16-23.

The government is correct that the Supreme Court and the Ninth Circuit have not conclusively decided that *Mathews* governs challenges to detention under Section 1226(c). *See Doe v. Becerra*, 2023 WL 8407557, at *7. "[P]art of the reason may be that until very recently, the Ninth Circuit read Section 1226(c) as requiring bond hearings as a matter of *statute* rather than constitutional due process, obviating any need to decide this question." *Id.* (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022)). In *Rodriguez Diaz*, which the government cites as declining to decide whether *Mathews* applies to procedural due process challenges to mandatory detention under Section 1226(c) (*see* Dkt. 11 at 19), the Ninth Circuit nevertheless *did* apply *Mathews* by "assum[ing] without deciding that *Mathews* applies." *Rodriguez Diaz*, 53 F.4th at 1207. Just as in *Rodriguez Diaz*, "the government [here] is not specific about the test [the Court] should apply instead." *Id.* at 1206.

The government asserts that Petitioner is indisputably subject to Section 1226(c) and that "his detention has been protracted by his own litigation decisions." Dkt. 11 at 13. "But that logic has no limiting principle." *Doe v. Becerra*, 2023 WL 8407557, at *7. Neither party disputes that Petitioner is required by statute to be detained. "But the government clearly cannot detain Petitioner forever—without any individualized consideration of whether that detention is necessary to protect the public or ensure that Petitioner appears at his removal proceedings—simply because Section 1226(c) says so." *Id.* In other words, "[e]ven if detention under Section 1226(c) may be facially constitutional for a brief initial period, *see Demore*, 538 U.S. at 513, at some point mandatory detention without individualized consideration of whether the interests

14

invoked as generally warranting that detention in fact require it in a specific case … 'cannot stand' under the Due Process Clause." *Id.* (quoting *Stanley v. Illinois*, 405 U.S. 645, 656–57 (1972)).

As the Ninth Circuit recognized in *Rodriguez Diaz* (where it applied *Mathews*), *Mathews* has been widely and regularly applied in the context of other immigration provisions, and "remains a flexible test that can and must account for the heightened government interest in the immigration detention context." 53 F.4th at 1206. The Court will therefore join others in this District in applying *Mathews* to determine whether Petitioner is entitled to a bond hearing. *See, e.g, Doe v. Becerra*, 2023 WL 8407557, at *8; *I.E.S.,* 2023 WL 6317617, at *8.

The *Mathews* test considers three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Petitioner unquestionably has a strong interest in being free from prolonged detention, and the government's imposition on this interest grows as his time in detention increases. *Doe v. Becerra*, 2023 WL 8407557, at *8; *I.E.S.,* 2023 WL 6317617, at *8. The government suggests that Petitioner's liberty interests are diminished because he is a "criminal noncitizen[]" whose "removal status … is undisputed." Dkt. 11 at 19. But the fact that he is not a citizen and has been convicted of crimes that subject him to Section 1226(c) does not by itself reduce Petitioner's own personal interest in not being detained by the government for over fifteen months in the possible absence of any need for that detention. Those factors are instead better considered in evaluating the government's interests. *Doe v. Becerra*, 2023 WL 8407557, at *8.

The government also argues that Petitioner's prolonged detention is due at least in part to his own litigation choices. But there is no indication that Petitioner acted in bad faith or

15

purposefully sought to delay his proceedings. His interests in his physical freedom are not diminished because he chose to pursue entirely legitimate proceedings to which he is legally entitled. *Doe v. Becerra*, 2023 WL 8407557, at *8; *I.E.S.,* 2023 WL 6317617, at *8.

At the same time, the government undoubtedly has significant interests at stake. It relies upon two in particular: ensuring Petitioner's appearance at removal proceedings and protecting public safety. Dkt. 11 at 22-23. These are precisely the interests the Supreme Court looked to in *Demore* to determine that Section 1226(c) mandatory detention is facially constitutional, at least initially. *See* 538 U.S. at 515, 518. The government also points to the "time and resources" it has expended in pursuing Petitioner's removal. Dkt. 11 at 23. Although these past costs are sunk no matter the outcome of Petitioner's case, the government's rationale is presumably that the expense will have been a waste if Petitioner flees before his case can be resolved.

But Petitioner has offered evidence that weighs against the risk that he will flee the country or pose a danger to the public. Petitioner entered the United States as a child and is now 54 years old. Dkt. 11 at 2; Dkt. 15 at 1; Dkt. 16 ¶ 4; Dkt. 15 at 1. He attended school in the Los Angeles area, and after completing high school, he was employed for ten years. Dkt. 16 ¶ 4. *Id.* ¶ 8 & Ex. C. In 1990 Petitioner became a Lawful Permanent Resident of the United States. Dkt. 11 at 2; Dkt. 12 ¶ 7. Petitioner now has two adult children who are U.S. citizens as well as other adult relatives in the United States. Dkt. 16 ¶¶ 6-7. He also has investigated a path towards stable housing and new employment in this country if he is released. *Id.* ¶¶ 13-14. During his time in prison, he obtained a G.E.D. and received commendations from his work supervisors. Dkt. 16 ¶¶ 5, 9 & Ex. D. More to the point, Petitioner has never had an opportunity to present this evidence to a neutral decisionmaker.[7] All that Petitioner seeks in his due process claim is the chance to

---

[7] In this respect, Petitioner's situation is notably different from the detainee in *Rodriguez Diaz*, a case cited by the government, who was detained under Section 1226(a) and thus received an individualized bond hearing shortly after the start of his detention and had a continuing right to request release on the basis of changed circumstances. *See* 8 U.S.C. § 1226(a)(2)(A); 8 C.F.R. § 1003.19(a), (e). It was only in the context of these procedural protections already afforded to noncitizens detained under Section

16

have a neutral judge consider on an individualized basis whether his ongoing detention is necessary to prevent him from fleeing or to protect the public.[8]

"Crucially, what matters under *Mathews* is not the government's overall interest (here, its interests in protecting the public, preventing Petitioner's flight, and avoiding a waste of resources), but the degree to which its interests may be marginally impeded by providing additional procedural protections." *Doe v. Becerra*, 2023 WL 8407557, at *9. Here, the government's interests will still be largely protected if Petitioner is given a bond hearing: if the immigration judge determines that Petitioner is a flight risk or a threat to the community, he will presumably remain in custody. If Petitioner poses no such risk, the same government interests will be protected even if he is released. The only remaining interest at issue is the administrative burden of providing a hearing, but that cost is minimal when weighed against the infringement on liberty interests resulting from Petitioner's lengthy detention.

That leaves the remaining *Mathews* factor: the risk of erroneous deprivation if Petitioner is not provided a hearing. The government argues that "there is no risk of an erroneous finding that Petitioner is subject to Section 1226(c)." Dkt. 11 at 21. But Petitioner's challenge is not to that determination; instead, the issue is the absence of any individualized evaluation of whether, under Petitioner's present life circumstances, his detention is necessary to protect the public or ensure his removal. "To presume dangerousness to the community and risk of flight based solely on [a] past

---

1226(a) that *Rodriguez Diaz* concluded noncitizen detainees had no constitutional right to additional bond hearings based solely on the passage of time.

[8] The government cites *Ramirez v. Sessions,* No. 18-cv-05188-SVK, 2019 WL 11005487 (N.D. Cal. Jan. 30, 2019), where this Court denied a habeas petition filed by an entering alien detained under 8 U.S.C. § 1225(b), relying on cases involving similarly situated detainees, but that case is distinguishable. ICE had considered and rejected parole of the *Ramirez* petitioner. *Id.* at *7. The Court noted that although the parole decision was not the same as a bond hearing, the same factors were considered. *Id.* In addition, the petitioner in *Ramirez* had only recently entered the United States and, unlike Petitioner in this case, offered no evidence to mitigate her risk of flight. *Id.* at *1, 7. In any event, just as stated in *Ramirez* and numerous other cases in this District, courts decline to follow a bright line rule based upon the length of detention and therefore the similar length of detention in *Ramirez* and this case is not dispositive. *Id.* at *6.

record does not satisfy due process." *Doe v. Becerra*, 2023 WL 8407557, at *9 (quoting *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398–99 (3d Cir. 1999)). Because Petitioner has never had the chance to have the questions of whether he poses a flight risk or safety threat individually considered, the risk of erroneous deprivation is high, particularly when Petitioner has offered evidence regarding his personal history in the United States, rehabilitation and family ties.

Weighed together, the three *Mathews* factors favor providing Petitioner with an individualized hearing to consider whether his continued detention is justified. Because the decisionmaker will necessarily consider the same kinds of risks that the government points to as justifying Petitioner's detention, requiring such a hearing will not unduly burden the government or the broader public.

Having determined that Petitioner is entitled to a bond hearing, the Court concludes that this hearing should be conducted before an immigration judge, who is in a better position than the Court to evaluate the relevant factors. *See I.E.S.*, 2023 WL 6317617, at *9. At this hearing, the government shall bear the burden of proving by clear and convincing evidence that Petitioner's continued detention is warranted. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *Doe v. Becerra,* 2023 WL 8307557, at *10.[9]

### B. Substantive Due Process Claim

The petition in this case does not specifically assert a claim regarding Petitioner's

---

[9] When *Singh* considered what standard of proof applies in bond hearings, the Ninth Circuit believed that such hearings were required by statute—a conclusion subsequently abrogated by *Jennings v. Rodriguez*, 583 U.S. 281 (2018). But *Singh*'s holding on the burden of proof was based on constitutional due process principles rather than any interpretation of the statute. *Singh*, 638 F.3d at 1204 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) and *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)). Because *Singh* specifically considered the precise issue here—the burden of proof that procedural due process requires in immigration bond hearings—and that holding has not been overturned, "*Singh*'s constitutional holding … remains binding law." *Rodriguez Diaz v. Garland*, 83 F.4th 1177, 1179 (9th Cir. 2023) (mem.) (Paez, J., dissenting from denial of rehearing en banc); *see also Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023) (applying *Singh* to place the burden of proof on the government in a Section 1226(c) bond hearing and collecting other Northern District decisions reaching the same result).

substantive due process rights, although a footnote in Petitioner's traverse purports to "reassert[] all arguments presented in his Petition, including his substantive due process … claims." *See* Dkt. 15 at 10 n.3.

Respondents are correct that in *Demore v. Kim*, the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), recognizing that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process" that serves the valid governmental purpose of mitigating the risks that certain noncitizens in deportation proceedings would constitute a flight risk or a threat to the community. 538 U.S. at 521–23. "*Demore* stands for the proposition that detention pursuant to § 1226(c) is generally not punitive because it serves a valid governmental purpose" but does not address whether, as applied in a particular case, section 1226(c) is punitive and thus unconstitutional. *I.E.S.*, 2023 WL 6317617, at *7.

"Substantive due process prohibits civil detention that is punitive in purpose or effect." *Id.* (citing *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004)). However, even if Petitioner raised and properly preserved a substantive due process claim in this case, it appears that it would be based on an argument that his detention had become punitive because he does not pose a risk of flight or danger. *See, e.g., id.* and cases cited therein. The bond hearing that the Court is ordering gives Petitioner the opportunity to have a neutral arbitrator evaluate whether the government could prove that he poses such a risk.

Accordingly, under the facts of this case, the Court **DENIES** Petitioner's petition to the extent that it argues that his detention violates his substantive due process rights.

### C. Eighth Amendment Claim

Petitioner's argument that his detention also violates his right to bail encompassed by the Eighth Amendment is unavailing. "[D]eportation proceedings are civil, rather than criminal, in nature." *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002) (citing *INS v. Lopez-Mendoza*, 468

U.S. 1032, 1039 (1984)). Petitioner is thus not entitled to habeas relief on the ground that his immigration detention violates the Eighth Amendment's prohibition against excessive bail. *See Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *6 (N.D. Cal. Jan. 25, 2019); *see also Slim v. Nielson*, No. 18-CV-02816-DMR, 2018 WL 4110551, at *7 (N.D. Cal. Aug. 29, 2018); *Calmo v. Sessions*, No. C 17-07124 WHA, 2018 WL 2938628, at *5 (N.D. Cal. June 12, 2018). Accordingly, Petitioner's Eighth Amendment claim is denied.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's writ of habeas corpus with respect to his argument that his prolonged detention without an individualized bond hearing violates his procedural due process rights. The Court **ORDERS** the Immigration Judge to conduct a bond hearing by **March 13, 2024**. At the bond hearing, the government shall bear the burden of proving by clear and convincing evidence that continued detention is warranted.

The Court **DENIES** Petitioner's writ of habeas corpus with respect to his arguments that his detention violates his substantive due process or Eighth Amendment rights.

**SO ORDERED.**

Dated: February 21, 2024

SUSAN VAN KEULEN
United States Magistrate Judge